IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD TANGLE, | ) | C.A. No. 08-112 Erie |
| Plaintiff | ) | |
| | ) | |
| v. | ) | District Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| STATE FARM INSURANCE | ) | |
| COMPANIES, | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that State Farm's Motion for Summary Judgment [ECF No. 32] be granted.

### II. REPORT

#### A. Relevant Procedural History

On April 22, 2008, Plaintiff Ronald Tangle filed the instant contract action against Defendant State Farm Insurance Companies ("State Farm"). Plaintiff alleges that State Farm acted in bad faith and breached its contract of insurance with Plaintiff when it "unreasonably" delayed payment of Plaintiff's fire insurance claim for a period of approximately seventeen (17) months. As a result, Plaintiff seeks compensatory damages in excess of $ 75,000.00, punitive damages, attorneys' fees, and litigation costs.

On October 30, 2009, State Farm filed a motion for summary judgment arguing that it is entitled to judgment as a matter of law on Plaintiff's claims. [ECF No. 32]. Plaintiff has since filed a brief in response to State Farm's motion [ECF No. 44], and State Farm has filed a reply brief [ECF No. 47]. This matter is now ripe for this Court's consideration.

### B. Relevant Factual History[1]

At all times relevant to this action, Plaintiff was, and remains, the owner of residential real property at 813 East 20th Street, Erie, Pennsylvania ("the Property"). On May 16, 2007, a fire occurred at the Property. At the time, the Property was insured by State Farm under Homeowner's Policy No. 38-LY-8877-7 ("the Policy").

The Erie Fire and Police Departments responded to and investigated the fire, which they found to be of suspicious origin. In particular, when firefighters arrived at the scene, all doors to the Property were secured and locked. Upon entry a "heavy odor of gasoline" was noted, and it was determined that the fire had originated in a second floor bedroom where evidence of a time delay ignition device and an accelerant were located. (See Erie Fire Department Investigation Report, ECF No. 34-2, at pp. 4-5).

Detective Ed Tucholski ("Tucholski") of the Erie Bureau of Police was assigned to investigate the fire. (See Affidavit of Specific Articulable Facts for Records prepared by Tucholski ("Tucholski Affidavit"), ECF No. 34-2, at p. 1). As part of his investigation, Detective Tucholski conducted interviews of Plaintiff and Plaintiff's girlfriend, Keziah Stovall ("Stovall"), who had both been at the Property earlier on the day of the fire. During his interview, Plaintiff disclosed that he had the only set of keys to the Property. According to Tucholski, Plaintiff then stated that, at the time of the fire, he had stopped at the Property "on happenstance - just a routine visit during his workday while on his route" as a UPS driver, at which time he discovered the fire department putting out the fire. (Id.). However, after Plaintiff was advised that Stovall had called emergency services to report the fire, Plaintiff admitted that Stovall had actually called to inform him of the fire and then picked him up and transported him to the fire scene so that he could check on his house. (Id.). Plaintiff also admitted that, although he was working on the morning of the fire, he had missed some stops on his delivery route,

---

[1] The factual history recited herein has been gleaned from the undisputed facts set forth in the parties' concise statements of material facts [ECF Nos. 34 and 45], as well as incident reports, affidavits, deposition transcripts, policy documents, and other properly authenticated evidentiary documents that have been submitted by the parties.

2

without explanation. (Id.).

Later on the day of the fire, Plaintiff visited the office of his State Farm agent to report the loss. On May 18, 2007, the Erie Bureau of Police informed State Farm that the fire was being investigated as an arson and that Plaintiff was a possible suspect. On the same day, Jon Brautigam ("Brautigam") of State Farms' Special Investigation Unit was assigned to handle the internal investigation of the fire claim, and Larry Dolak ("Dolak") was assigned as claims adjuster. In addition, State Farm retained Robert Stewart ("Stewart"), a private fire investigator, to conduct an origin and cause investigation related to the fire. On May 24, 2007, Stewart issued a Fire Incident Investigation Report to Brautigam confirming that the fire was "the direct result of an incendiary act" and was "aided by the use of an accelerant." (ECF No. 34-3 at p. 6).

As part of his investigation, Brautigam obtained recorded statements from Plaintiff on June 11, 2007, and from Stovall on June 19, 2007. (See Exhibits 7 and 8 attached to Plaintiff's Concise Statement of Material Facts, ECF Nos. 45-7 and 45-8). Subsequently, by letter dated June 21, 2007, Brautigam requested that Plaintiff provide him with copies of Plaintiff's and Stovall's phone records for the months of April and May 2007, and Plaintiff's income tax records for 2005 and 2006. (See Deposition Exhibit B attached to the transcript of Plaintiff's deposition of March 30, 2009, ECF No. 34-4, at p. 38). Due to Plaintiff's failure to comply with his first letter, Brautigam reiterated the document requests by follow-up letters dated July 16, 2007, and August 23, 2007. (See Deposition Exhibits D and F attached to the transcript of Plaintiff's deposition of March 30, 2009, ECF No. 34-4, at pp. 41 and 43).

In addition, by letter dated July 11, 2007, Dolak requested that Plaintiff provide him with a Municipal Lien Certificate from the Erie City Treasurer's Office, explaining that the certificate was needed "to allow payment for damages to [Plaintiff's] dwelling." (See Deposition Exhibit C attached to the transcript of Plaintiff's deposition of March 30, 2009, ECF No. 34-4, at p. 39). Dolak followed up with letters dated August 20, 2007, and September 18, 2007, indicating he had not yet received the Municipal Lien Certificate and reiterating his request for the same. (See Deposition Exhibits E and G attached to the transcript of Plaintiff's deposition of March 30, 2009, ECF No. 34-4, at pp. 42 and 44).

3

On September 19, 2007, Brautigam sent Plaintiff a letter requesting that he attend an examination under oath ("EUO"), which he was obligated to do under the conditions of the Policy. (See Deposition Exhibit H attached to the transcript of Plaintiff's deposition of March 30, 2009, ECF No. 34-4, at p. 46). State Farm's attorney, Richard DiBella, Esquire ("DiBella") followed up with a letter to Plaintiff dated September 21, 2007, asking Plaintiff to contact him to schedule the EUO, and listing a number of documents Plaintiff was expected to bring with him to the EUO. (See Deposition Exhibit I attached to the transcript of Plaintiff's deposition of March 30, 2009, ECF No. 34-4, at pp. 48-49). DiBella reiterated his request that Plaintiff contact him to schedule his EUO, by letter dated September 28, 2007. (See Deposition Exhibit J attached to the transcript of Plaintiff's deposition of March 30, 2009, ECF No. 34-4, at p. 50). After receiving no response from Plaintiff to his previous letters, DiBella sent a certified letter to Plaintiff, dated October 24, 2007, stating that State Farm had unilaterally scheduled Plaintiff's EUO for November 16, 2007. (See Deposition Exhibit K attached to transcript of Plaintiff's deposition of March 30, 2009, ECF No. 34-4, at pp. 51-52). Shortly thereafter DiBella received notice that Plaintiff had obtained legal representation, and he agreed with Plaintiff's attorney to reschedule Plaintiff's EUO for November 19, 2007, (See Deposition Exhibit L attached to the transcript of Plaintiff's deposition of March 30, 2009, ECF No. 34-4, at p. 53).

Plaintiff's EUO was subsequently rescheduled multiple times at the request of Plaintiff's counsel, and was ultimately held on February 18, 2008; however, Plaintiff did not bring any of the requested documentation with him. (See transcript of Plaintiff's EUO, ECF No. 34-5, at internal pp. 46-51). According to State Farm, this documentation was requested again on February 20, April 23, and May 22, 2008, with no response from Plaintiff. (State Farm's Concise Statement of Material Facts, ECF No. 34, at ¶ 10e). In the meantime, Plaintiff filed the instant action on April 22, 2008.

After the filing of this action, State Farm took the deposition testimony of Stovall on August 15, 2008. (See Exhibit F attached to State Farms Concise Statement of Material Facts, ECF No. 34-6). State Farm subsequently completed its investigation of the fire and, on October 31, 2008, issued to Plaintiff a check in the amount of $ 46,459.62, which was broken down by

State Farm as follows: $ 40,448.04 for the actual cash value of the repairs to the structure, and $6,058.00 for the actual cash value of the damaged contents.[2] (See Exhibit G to State Farm's Concise Statement of Material Facts, ECF No. 34-7).

### C. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(non-movant must present affirmative evidence-more than a scintilla but less than a preponderance-to support his claims). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002) quoting Battaglia v. McKendry, 233 F.3d 720, 722 (3d Cir. 2000). Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements, rather, "the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." In re Ikon Office Solutions, 277 F.3d 658, 666 (3d Cir. 2002).

On a motion for summary judgment, the district court may not weigh the credibility or weight of the evidence, rather, it may only determine the existence of a triable issue of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). A genuine

---

[2] The Court is aware that the individual figures do not add up to the total, but no explanation of this disparity has been provided.

issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### D. Discussion

#### 1. Count I - Bad Faith

To establish a claim for bad faith, a plaintiff is required to demonstrate "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Klinger v. State Farm Mut. Auto Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997). While neither Pennsylvania's bad faith statute, 42 Pa.C.S. § 8371[3] nor the Pennsylvania Supreme Court definitively establish a single definition of bad faith, the Third Circuit has adopted the definition set out by the Pennsylvania Superior Court in Terletsky v. Prudential Property and Cas. Ins. Co., 437 Pa.Super. 108, 649 A.2d 680 (1994):

> 'Bad faith' on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005), quoting Terletsky, 649 A.2d at 688 (citations omitted).

Importantly, a plaintiff is required to prove these elements not by the usual preponderance of the evidence standard applied in most civil actions, but by clear and convincing evidence. See Babayan, 430 F.3d at 137, citing Terletsky, 649 A.2d at 688. This places a heavier burden upon

---

[3] 42 Pa.C.S. § 8371 provides as follows:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorneys fees against the insurer.

6

a plaintiff, and requires a plaintiff to come forward with "evidence that is 'so clear, direct, weighty and convincing' that one could reasonably find against the defendant insurer 'without hesitancy' and 'with a clear conviction.'" Kubrick v. Allstate Ins. Co. (In re Estate of Kubrick), 2004 WL 45489 (E.D.Pa. 2004), quoting Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 752 (3d Cir. 1994) and U.S. Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306, 309 (3d Cir. 1985).

At the summary judgment stage, this means that "the insured's burden in opposing a summary judgment motion brought by the insurer is 'commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial.'" Babayan, 430 F.3d at 137 (citation omitted). In other words, "in order to defeat a motion for summary judgment, a plaintiff must show that a jury could find by the stringent level of clear and convincing evidence, that the insurer lacked a reasonable basis for its handling of the claim and that it recklessly disregarded its unreasonableness." Williams v. Hartford Cas. Ins. Co., 83 F.Supp.2d 567, 571 (E.D.Pa. 2000)(internal quotation omitted).

On the other hand, in that "the essence of a bad faith claim is the denial of coverage without good reason," it follows that "an insurer is entitled to summary judgment if it can show a reasonable basis for its actions." Rock-Epstein v. Allstate Ins. Co., 2008 WL 4425059 (E.D.Pa. Sep. 29, 2008), citing Jung v. Nationwide Mut. Fire Ins. Co., 949 F.Supp. 353, 360 (E.D.Pa. 1997); Quaciari v. Allstate Ins. Co., 998 F.Supp. 578, 581 n.3 (E.D.Pa. 1998). "[A]n insurer meets its burden of showing 'a reasonable basis' for investigating a claim, and is thus entitled to judgment as a matter of law, where it demonstrates the existence of certain 'red flags' which prompted it to further investigate an insured's claim." Aquila v. Nationwide Mut. Ins. Co., 2008 WL 5348137 at * 8 (E.D.Pa. Dec. 15, 2008)(citations omitted).

Here, State Farm has pointed to a number of red flags that caused it to investigate the fire at the Property further:

    1.    Fire investigators determined that the "fire was incendiary, set with a time delay ignition device (electric blanket) and accelerated by a quantity of flammable liquid most likely gasoline." (See Exhibit B attached to State Farm's Concise Statement of Material Facts, ECF No. 34-2);

    2.    The fire occurred on a day when both Plaintiff and his girlfriend,

7

>   Stovall, had been at the Property earlier in the morning;
> 
> 3. The Property was secured and locked when the fire department arrived, and Plaintiff possessed the only keys to the Property;
> 
> 4. Detective Tucholski's interview of the Plaintiff yielded inconsistencies regarding the manner in which Plaintiff discovered the fire and arrived at the fire scene, and revealed that Plaintiff had missed some stops along his UPS delivery route on the morning of the fire, without explanation;
> 
> 5. Detective Tucholski later discovered that Plaintiff owed property taxes in excess of $ 2,000.00, a past due National Fuel bill in excess of $ 2,000.00, and a disputed debt to Erie General Federal Credit Union in excess of $ 3,000.00; and
> 
> 6. Plaintiff was identified as a possible suspect in the fire by the Erie Bureau of Police.

Based on the foregoing, State Farm had a reasonable justification for conducting an investigation of the fire and Plaintiff's possible involvement in causing the fire. Nonetheless, Plaintiff claims that "as of the close of 2007 if not earlier, State Farm had collect[ed] all the information it needed to reasonabl[y] evaluate and pay the claim of Tangle in this matter." (Plaintiff's Brief, ECF No. 44, at p. 13). Thus, Plaintiff claims that State Farm's continued delay in making payment on the claim for a total period of 17 months was "[w]ithout any reasonable basis," and constituted bad faith. (Id.). The Court disagrees

While the Court recognizes that delay "may be a relevant factor in determining whether an insurer has acted in bad faith," it is well-settled that "a long period of time between demand and settlement does not, on its own, necessarily constitute bad faith." Williams, 83 F.Supp.2d at 572 (finding that fourteen month delay between date insurer had notice of claim and date of vocational assessment was not unreasonable or constituted bad faith). Delay itself is only deemed relevant to the extent that "a defendant insurer *knew* that it had no basis to deny the claimant." Kosierowski v. Allstate Ins. Co., 51 F.Supp.2d 583, 589 (E.D.Pa. 1999). "Importantly, even where all delay may be attributable to the insurer, so long as the 'delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred.'" Aquila, 2008 WL 5348137 at * 9 (internal citation omitted), quoting Kosierowski, 51 F.Supp.2d at 589 (citations omitted).

Here, the record demonstrates that the delay in State Farm's investigation and ultimate

8

payment of Plaintiff's fire claim was caused, in considerable part, by Plaintiff's own lack of cooperation and unresponsiveness. In particular, the record discloses that State Farm's representatives made multiple attempts to obtain various financial documents from Plaintiff, for a period of several months, to no avail. Contrary to Plaintiff's claim that State Farm's repeated requests for financial information "border[ed] on harassment" (Complaint, ECF No. 1, at ¶ 17), the Court finds that such requests were reasonably related to State Farm's investigation of whether Plaintiff had a motive to commit arson. See Parasco v. Pacific Indem. Co., 920 F.Supp. 647, 652 (E.D.Pa. 1996)(inquiries into whether the insured was in a "stable financial posture" was "material" to the issue of motive), citing Stover v. Aetna Casualty & Sur. Co., 658 F.Supp. 156, 160 & n. 3 (S.D.W.Va. 1987)(noting that the financial state of the insured is a material line of inquiry in cases of arson). Moreover, the repetition of State Farm's document requests was, in fact, necessitated by Plaintiff's own dilatory conduct in continually failing to comply with such requests.

In addition to Plaintiff's failure to provide documents that were material to State Farm's investigation of the fire claim, Plaintiff also caused a substantial delay in the taking of his EUO, which was first requested by State Farm on September 19, 2007, but was not conducted until February 18, 2008. Then, to compound the delay, Plaintiff brought none of the documents he was requested to bring to the EUO. Plaintiff also indicated at the EUO that the contents inventory he had submitted to State Farm was incomplete. Furthermore, despite advising Plaintiff of its need to obtain the EUO of Plaintiff's girlfriend, Stovall, who was a material witness to events surrounding the fire, State Farm was unable to do so until Stovall submitted to a deposition in the instant case on August 15, 2008.

In short, Plaintiff cannot meet his burden of showing by clear and convincing evidence that State Farm "lacked a reasonable basis for its handling of the claim and that it recklessly disregarded its unreasonableness." Williams, 83 F.Supp.2d at 571. To the contrary, State Farm has shown that it had a reasonable basis for its actions, thus warranting the entry of summary judgment in its favor with regard to Plaintiff's bad faith claim.

### 2. Count II - Breach of Contract

In Count II of his Complaint, Plaintiff alleges that State Farm breached its contract of insurance with Plaintiff "in not fulfilling its duty to pay a claim timely presented after reasonable investigation of said claim." (Complaint, ECF No. 1, at ¶¶ 27-28).

"Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.'" Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003), quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa.Super. 1999).

In this case, there is no dispute that a valid and binding contract of insurance existed between the parties and that the contract was in effect at the time of the fire at issue. Nonetheless, Plaintiff has failed to identify a contractual provision that was allegedly breached by State Farm. Instead, Plaintiff merely asserts that "the actions of State Farm in failing to pay the claim in this matter for 17 months was [not] reasonable in nature and constituted a breach of contract existing between the parties by State Farm." (Plaintiff's Brief, ECF No. 44, at p. 13). However, Plaintiff has not, and cannot, identify a contractual provision that State Farm breached in continuing its investigation for that period of time. See Brown v. Liberty Mut. Ins. Group, 2001 WL 87741 at * 2 (E.D.Pa. Jan. 30, 2001)(finding a breach of contract claim could not survive summary judgment where the plaintiff failed to identify a contractual provision that the insurer breached in continuing its investigation for a period of eleven months).

Moreover, "[a]n action for breach of an insurance contract does not lie when the policy proceeds have been paid." Oehlmann v. Metropolitan Life Ins. Co., 644 F.Supp.2d 521, 533 (M.D.Pa. 2007), citing Wiener v. Banner Life Ins. Co., 2003 U.S.Dist. LEXIS 4957, at * 25 (E.D.Pa. Feb. 28, 2003)(holding that "Defendant did not breach this contract by conducting an investigation that it had a right to conduct. And, in fact, Defendant did pay the value of the policy to Plaintiff after the investigation was completed"). Here, after completing its investigation on or about October 31, 2008, State Farm issued policy proceeds to Plaintiff in the total amount of $46,459.62, representing payment of the actual cash value of the estimated repairs to the damaged structure, plus the repair or replacement value, less depreciation, of the damaged contents. Such payment was made in

accordance with the following relevant terms of the Policy:

> **COVERAGE A - DWELLING**
>
>       \*                \*                \*
>
> **2. A2 - Replacement Cost Loss Settlement - Common Construction**
>
>    a.   We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property..., subject to the following:
>
>            \*                \*                \*
>
>    (2)   until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**...
>
>    (3)   when the repair or replacement is actually completed... we will pay the covered additional amount you actually and necessarily spend to repair to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;
>
>    (4)   to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify [State Farm] within 30 days after the work has been completed;...

(See Policy attached as Exhibit A to State Farm's Concise Statement of Material Facts, ECF No. 34-1, at pp. 14-15 (internal pp. 11-12)).[4]

As of March 30, 2009, the date of Plaintiff's deposition in this case, Plaintiff had not completed, or even started, any repairs to the Property. (See transcript of Plaintiff's deposition

---

[4] Similarly, regarding the repair or replacement cost of personal property, the Policy provides that "until repair or replacement is completed [State Farm] will pay only the cost to repair or replace less depreciation," and "after repair or replacement is completed, [State Farm] will pay the difference between the cost to repair or replace less depreciation and the cost [the insured has] actually and necessarily spend to repair or replace the property...." (See the Policy attached as Exhibit A to State Farm's Concise Statement of Material Facts, ECF No. 34-1, at p. 15 (internal p. 12)).

attached as Exhibit D to State Farm's Concise Statement of Material Facts, ECF No. 34-4, at p. 12 (internal pp. 44-45)). Thus, State Farm's payment of actual cash value on October 31, 2008, constituted full payment of proceeds due under the Policy. As a result, Plaintiff's breach of contract claim cannot lie. Oehlmann, 644 F.Supp.2d at 533.

**III.    CONCLUSION**

For the foregoing reasons, it is respectfully recommended that State Farm's Motion for Summary Judgment [ECF No. 32] be granted.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: August 4, 2010

cc:     The Honorable Sean J. McLaughlin
        United States District Judge